IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3127-FL

| | |
|---|---|
| SHERMAN A. THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIEUTENANT SHELTON; SERGEANT )<br>WILFORD FOX; SERGEANT )<br>ALPERSTEIN; OFFICER NATHAN )<br>MCMILLIAN; OFFICER ANDERSON; )<br>AND OFFICER ANTAUIS GRAY, )<br>)<br>Defendants. ) | ORDER |

The matter is before the court on the motion for summary judgment (DE # 22) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Amy B. Alperstein ("Alperstein"), Nathan McMillian ("McMillian"), Wilford J. Fox ("Fox"), Antauis Gray ("Gray"), Officer Anderson ("Anderson"), and Robin L. Shelton ("Shelton") (collectively "defendants"). Plaintiff responded to defendants' motion. Also before the court are plaintiff's motions for an extension of time (DE #s 37, 38), to which defendants did not respond. In this posture, the matters are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, and denies plaintiff's motions for an extension of time.

**STATEMENT OF THE CASE**

On July 13, 2011, plaintiff filed this action pro se pursuant to 42 U.S.C. § 1983, alleging that defendants used excessive force against him in violation of the Eighth Amendment to the United States Constitution. On May 8, 2012, defendants filed a motion for summary judgment arguing that

plaintiff is unable to establish an Eighth Amendment violation. Alternatively, defendants assert the defense of qualified immunity. The matter was fully briefed.

Plaintiff argued, in response to defendants' motion for summary judgment, that defendants possess a videotape of the alleged use of force incident, but that it was not made part of the record. Accordingly, on February 11, 2013, the court directed defendants to submit to the court any videotape of the alleged use of force incident. Defendants responded to the court's order denying the existence of a videotape recording of the use of force incident at issue. Plaintiff then submitted a motion requesting an extension of time to allow him the opportunity to submit a surveillance video.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Plaintiff's allegations arise out of events that occurred on March 16, 2010, while he was incarcerated at Central Prison in Unit One.[1] On this date, "plaintiff requested that nurse Ms. Goins [("Goins")] bring back [his] antidepressant medication. So, plaintiff got emotionally upset and stated he [was] going to set a fire in his cell if he [couldn't] talk to the mental health doctor . . . ." Compl. p. 7. Plaintiff informed McMillian of the situation, but McMillian failed to act. Id. At approximately 2:15 p.m. that day, plaintiff set fire to the mattress in his cell, creating an emergency that required the evacuation of inmates and staff. Id. ¶¶ 6, 9. Lieutenant Warren ("Warren"), Sergeant Freeman ("Freeman"), Sergeant White ("White"), Officer Burden ("Burden"), Officer Townson ("Townson"), as well as defendants Alperstein, Fox, McMillian, and Gray were dispatched to Unit One to restore order and ensure safety. Id. ¶ 9.

---

[1] Correctional Captain Yvonne Hale, a non-party to this action, testified that Unit One at Central Prison houses a inmate population that is "extremely difficult to manage." Hale Aff. ¶ 5. Plaintiff was confined to Unit One because he was on intensive control. Id. Intensive control is intended to control inmates whose conduct has been repeatedly disruptive to the orderly operation of a facility or noncompliant with lawful orders or instructions. Id.

2

Upon arriving at plaintiff's cell, Warren directed officers to remove plaintiff from his cell. Id. ¶ 10. McMillian then opened plaintiff's food service door, and Gray applied handcuffs to plaintiff. Id. At this point the parties' accounts of the March 16, 2010, event differ. In plaintiff's version of the facts, the officers placed him in full restraints,[2] and removed him from his cell. Compl. p. 5. During this process, an officer struck plaintiff in the face. Id. The officers then took plaintiff to the sally port area where McMillian, Fox, Alperstein, Anderson, and Gray punched him and knocked him to the ground. Once on the ground, plaintiff was "kicked and stomped over and over to which [his] head was stomped against the floor." Id. Plaintiff states that the repeated punching caused his ear to bleed and to buzz for "a week or more." Id. p. 11. Plaintiff also asserts that he "was kicked so hard up the buttocks that [he] later had hemorrhoids." Id. p. 5.

In addition to the repeated stomping and punching, Fox injured plaintiff's left wrist "d[ue] to the handcuffs tearing open [his] wrist." Id. p. 10. Fox also kicked plaintiff twice in the groin, causing him to have difficulty urinating. Id. p. 11. Plaintiff attributes Fox's alleged excessive force to plaintiff's "liking Ms. McDaniels [a member of prison staff] to which [Fox] told [plaintiff] that is why [Fox] really kicked [his] a**." Id.

After plaintiff's cell extraction and initial encounter with defendants, plaintiff was "taken to the sergeant['s] office and stomped and kicked unconscious. . . ." Id. p. 8. During this time, plaintiff was "punched over and over and blood was coming out of [his] ear." Id. In addition to the above-stated injuries, plaintiff experienced "swelling knots on [his] head and serious (sic) weeks of headaches," a broken denture plate, as well as swelling and a blood clot in his eye. Id. pp. 5, 15.

---

[2] Plaintiff states that his full restraints consisted of a "waist chain with black lock box [] which is locked with a pad lock." Compl. p. 20. Plaintiff states that his leg restraints were so tight that he could not walk. Id.

3

Plaintiff additionally "has trouble breathing and pains in his chest as to pain in lungs. Plaintiff also suffers emotional depression d[ue] to fearing future abuse." Id. p.20.

According to defendants' version of the facts, when prison staff opened plaintiff's cell door, plaintiff ran out and used his shoulder to strike defendant McMillian in the chest. Hale Aff. ¶ 10. McMillian and Fox then each took hold of one of plaintiff's arms, but plaintiff resisted their attempts to get control of him. Id. McMillian and Fox thereafter used the bent wrist come along technique to escort plaintiff off the cellblock. Id.

As the officers were escorting plaintiff off of the cellblock, plaintiff leaned forward and backward rapidly, and used the back of his head to strike defendant Fox's face.[3] Id. ¶ 13. Lieutenant Warren then directed defendants Fox and McMillian to place plaintiff on the floor. Id. At this point, defendant Shelton arrived at the scene, and placed plaintiff in full restraints. Id.

In the interim, after plaintiff was removed from his cell, defendant Alperstein used a fire extinguisher to put out the fire in plaintiff's cell. Id. ¶¶ 15-16. This activity created a large amount of smoke. Id. As a result, other inmates were evacuated to the recreation yard and screened by medical staff. Id.

At approximately 2:45 p.m., plaintiff was screened by a nurse. Leach Aff. ¶ 7.[4] Plaintiff informed the nurse that force had been used against him and that he had inhaled smoke. Id. The nurse observed that plaintiff was restrained in a bent wrist come along, was being aggressive with custody staff, and complained of bilateral wrist pain. Id. The nurse also noted that plaintiff's right

---

[3] Plaintiff admits that he "head butted" Fox. Hale Aff. Ex. A, pp. 9, 29.

[4] Nurse Stephanie Leach ("Leach") submitted an affidavit in support of defendants' motion for summary judgment. Leach is employed by the North Carolina Department of Public Safety as a Risk Manager. Leach Aff. ¶ 2.

4

eye was slightly red, that his left eye was clear, that his upper back was slightly red, but that there was no swelling or bruising. Id. No treatment was recommended or provided to plaintiff. Id.

Upon leaving the nurse's station, defendants Fox and McMillian escorted plaintiff to a holding cell. Hale Aff. ¶ 14. Plaintiff continued to resist the officers, and they again used a bent wrist come along on his left wrist. Id. Following the second use of force incident, plaintiff was escorted to the nurse's station for a second medical screening. Id.

At approximately 4:00 p.m., plaintiff was screened by the nurse for a second time. Leach Aff. ¶ 8. Plaintiff informed the nurse that force had been used against him. Leach Aff. ¶ 8. The nurse noted that plaintiff's right eye was swollen. Id. The nurse also noted superficial abrasions, with bleeding, under the leg cuff on plaintiff's left leg. Id. The nurse cleaned the abrasions with hydrogen peroxide and applied bandages. Id. Plaintiff complained of a headache and was given ibuprofen under direct observation therapy. Id. Finally, the nurse noted that plaintiff's vision was unaffected. Id. Plaintiff's leg cuffs were loosened, and he appeared quiet and under control. Id.

Following the incident, plaintiff was charged with prison disciplinary offenses. Hale Aff. ¶ 18. Plaintiff subsequently was found guilty of setting a fire that endangered others' lives and damaged state property, as well as assaulting prison staff. Id.

On March 17, 2010, plaintiff, per his request, was interviewed by a social worker. Leach Aff. ¶ 9. The social worker's report states the following:

> Inmate Thompson stated that he had set a fire because he was upset at other inmates for picking on him, at custody, and his family. He stated that he felt he had to act out his anger and that setting a fire seemed to be a course of action that would cause the most discomfort to those individuals who had been harassing and upsetting him. He stated that he was grateful to the officers who rescued him. He stated

5

> that he was grateful that he had come out of the incident unharmed
> and reported that he did not want to die.

Id. Ex. B, p. 14. Plaintiff did not report the alleged excessive use of force to the social worker. Id. ¶ 9 and Ex. B, p. 14.

On March 21, 2010, plaintiff submitted a sick call request asking to have his head examined "d[ue] to being st[o]mped many times in head. I also was kick[ed] in the gro[in] many times and ha[ve] pains in abdominal area. And I need my l[eft] wrist screened and back." Id. ¶ 11, and Ex. B, p. 5. Plaintiff was scheduled to see the nurse on March 26, 2010. Id.

On March 26, 2010, plaintiff saw the nurse and told her that his head pain had resolved and that he had not had a problem for the preceding two days. Id. ¶ 12 and Ex. B, p. 5. The nurse then examined plaintiff and noted no bruising or swelling. Id. The nurse also noted that there were open abrasions on plaintiff's left wrist and lower right arm. Id. In response, the nurse cleaned plaintiff's abrasions with hydrogen peroxide, applied antibiotic ointment and bandages, and gave plaintiff supplies to keep the abrasions covered until healed. Id. Plaintiff was directed to return to medical as needed. Id. Throughout the month of March, plaintiff took prescribed antidepressant medication, including Wellbutrin, Paxil, and Depakote. Id. ¶ 15. Plaintiff also took Levsin, which is a smooth muscle relaxant. Id. From March 18, 2010 through March 31, 2010, plaintiff took Tylenol three times per day under direct observation therapy. Id. ¶ 20.

On April 17, 2010, plaintiff submitted a sick call request complaining of headaches which he attributed to his alleged head injuries. Id. ¶ 17. On April 20, 2010, the nurse examined plaintiff and found him to be ambulatory, alert, and talkative. Id. ¶ 19.

6

## DISCUSSION

A.  Motions for Extension of Time

Plaintiff filed two motions for an extension of time. In his first motion, plaintiff seeks an extension of time "to file a motion showing [he] has surveillance footage of [the] March 16, 2010 use of force . . . ." Pl.'s Mot. for Extension of Time, p. 1. Defendants previously submitted an affidavit from Correctional Lieutenant Joshua Panter stating that "no surveillance video footage of Plaintiff's cell, BL-202 of Unit One at Central Prison, from 16 March 2010 exists today." Panter Aff. ¶ 6. Plaintiff has not stated how he intends to produce non-existent video footage. Accordingly, in light of Panter's affidavit and plaintiff's lack of factual support for his motion, plaintiff's motion for an extension of time is DENIED.

As for plaintiff's second motion for an extension of time, plaintiff requests additional time to respond to defendants' motion for summary judgment. Plaintiff, however, previously filed two responses to defendants' motion for summary judgment. Plaintiff does not present any compelling reason to allow him the opportunity to file a third response to defendants' motion. Thus, plaintiff's second motion for an extension of time is DENIED.

B.  Motion for Summary Judgment

  1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

7

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2.    Analysis

        a.    Excessive Force

In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v.

8

Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

Plaintiff alleges that defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, a plaintiff must establish that the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm, ... contemporary standards of decency always are violated[,] whether or not significant injury is evident." Wilkins, 130 S.Ct. at 1178 (internal quotation marks and ellipsis omitted). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id. at 1178-1179.

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," a court should balance: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Id. at 321; Hudson v. McMillian, 503

9

U.S. 1, 7 (1992). The court is mindful that not every infliction of pain is forbidden. "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, at 1078. Rather, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Applying the Whitley factors set forth above to the two use of force incidents, there is no question that there was a need for force because plaintiff had set fire to his cell and resisted officers' efforts to extract him from his cell and to then move him to a holding cell. The record reflects, and plaintiff admits, that he attempted to head-but Fox during the cell extraction, despite wearing restraints. In fact, the record reveals that plaintiff incurred disciplinary convictions for his disruptive behavior and for assaulting correctional officers during the incident on March 16, 2010. Moreover, plaintiff's medical records reflect that he was aggressive toward custody staff when he arrived at his first medical screening. Thus, defendants can demonstrate that there was a need for the application of force because plaintiff created an emergency situation and resisted officers' attempts to restore order and to safely evacuate inmates.

The court next considers the relationship between the need for force and the amount of force that was used. Although plaintiff reports that he received injuries including knots on his head and hand, prolonged headaches, blurred vision and dizziness, a blood clot in his eye, reduced hearing, difficulty urinating, groin pain, hemorrhoids, abrasions to his wrist, and emotional distress from the

10

alleged use of force incidents, the alleged injuries largely are unsubstantiated by the record. Rather, the record reflects that plaintiff was medically screened immediately following both alleged use of force incidents and that the nurse noted only minor injuries such as a slightly red right eye, slightly red skin on his upper back, and abrasions to his wrists and arm. Based upon the *de minimis* nature of plaintiff's injury, as well as the lack of evidentiary support for plaintiff's allegations regarding the assault, the court finds that the relationship between the need for force and the forced used was proportionate. To the extent that the allegations differ with regard to the alleged use of force incident,[5] there is no evidence suggesting that defendants applied force in a malicious, wanton, or sadistic manner. Rather, defendants' actions were wholly consistent with the injuries of any inmate who actively resisted approximately five officers who were carrying out lawful actions in evacuating an entire unit of inmates and were restraining an inmate under strenuous circumstances.

As for the two remaining Whitley factors, the court finds it appropriate to address these factors together. Under the circumstances of this case, any reasonable officer would perceive a serious threat and sense of urgency created by the fire and reality of having to evacuate a unit of high risk intensive control inmates. As to the efforts to temper the severity of the forceful response, prison policy provides that pepper spray constitutes less force than hands on force. However, it was reasonable for the officer to believe, under these circumstances, that the use of pepper-spray would have made conditions worse due to the fire. Moreover, the evidence reflects that despite being in

---

[5] The court notes that plaintiff submitted affidavits from two fellow inmates attached to his response to defendants' motion for summary judgment. The first inmate, Tommy McMillian, states that he overheard Fox bragging about the alleged assault after it occurred. Additionally, inmate Stanley Earl Corbett stated that he too was the victim of an unrelated excessive force incident involving Fox and McMillian, which was dismissed by Judge Terrence W. Boyle in Corbett v. Branker, 5:10-CT-3093-BO (E.D.N.C. dismissed January 26, 2012). Because Tommy McMillian and Stanley Earl Corbett do not allege that they directly observed the alleged assault on plaintiff, the court finds that they are insufficient to support a finding that defendants acted in a malicious or sadistic manner.

11

full restraints, plaintiff resisted defendants' efforts to extract him from his cell and to later move him to a holding cell under the chaotic conditions of a prison fire in which both the guards and other inmates in the unit were in danger. Additionally, plaintiff's expression of gratitude toward the responding officers following the alleged use of force incident cast doubt on plaintiff's allegations of assault. Accordingly, upon a careful review of the Whitley factors, the court finds that defendants did not act maliciously or sadistically.

Based upon the foregoing, the court finds that plaintiff is not able to satisfy either the objective or subjective prongs of the Eighth Amendment test for either of the alleged use of force incidents. Thus, plaintiff is unable to establish a constitutional violation, and defendants are entitled to qualified immunity for plaintiff's excessive force claim.[6]

  b. Verbal Threats

Plaintiff also alleges that defendants subjected him to verbal threats and taunting. A prisoner's subjection to verbal abuse or profanity does not constitute a constitutional deprivation. Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990), aff'd, 917 F.2d 1302 (4th Cir. 1990) (citing Collins v. Haga, 373 F. Supp. 923, 925 (W.D. Va. 1974)). The law is clear that "[m]ere threatening language and gestures of a custodial officer, even if true, do not amount to a constitutional violation." Morrison, 755 F. Supp. at 687 (quoting Coyle v. Hughs, 436 F. Supp. 591, 593 (W.D. Okla. 1977)). Thus, plaintiff's allegations of threatening language fails to state a claim.

---

[6] To the extent plaintiff's claim against Shelton is based upon supervisor liability, the claim is dismissed because the court found no underlying Eighth Amendment violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

12

### c. Deliberate Indifference to Medical Care

Plaintiff suggests that McMillian acted with deliberate indifference to his medical needs because McMillian refused to assist him with getting the nurse to bring plaintiff's mental health medication.[7] To state a claim for relief under the Eighth Amendment of the United States Constitution, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" See Strickler, 989 F.2d at 1379 (quotations omitted).

Plaintiff's medical records reflect that throughout the month of March 2010, he took prescribed antidepressants medications including Wellbutrin, Paxil, and Depakote. Leach Aff. ¶ 15. Plaintiff's medical records also reflect that he took Levsin during this time period, a prescribed smooth muscle relaxant. Id. Finally, plaintiff's medical records reflect that he received medical care after both alleged use of force incidents, and that he received periodic medical care after the alleged incident. Id. ¶¶ 12-15. Accordingly, plaintiff's medical records reflect that he was receiving both

---

[7] The court notes that plaintiff's action focuses on defendants' alleged use of force. Plaintiff, however, suggests that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. In an abundance of caution, the court addresses this claim.

13

mental health and medical care during the month prior to the alleged use of force and after the alleged use of force. Plaintiff does not provide any factual support to support a contrary finding, aside from these conclusory allegations. Moreover, a disagreement between an inmate and a physician regarding the appropriate form of treatment, such as the one suggested by plaintiff, does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Thus, this claim is without merit.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 22) is GRANTED. Plaintiff's requests for an extension of time (DE #s 37, 38) are DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 19TH day of March, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge